UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSEF GARTNER USA LP, n/k/a PERMASTEELISA NORTH AMERICA CORP., | ) ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 10-40072-FDS |
| v. | ) ) | |
| CONSIGLI CONSTRUCTION CO., INC.; J.F. WHITE CONTRACTING COMPANY, INC.; and CONSIGLI/JFW, a Joint Venture, | ) ) ) ) ) | |
| Defendants/Plaintiffs-in-Counterclaim, | ) ) ) | |
| and | ) ) | |
| TRAVELERS CASUALTY AND SURETY COMPANY and FEDERAL INSURANCE COMPANY, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**
**ON DEFENDANTS' RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT**

**SAYLOR, J.**

This is a construction dispute arising out of a subcontract for a project at the Cambridge Public Library. Plaintiff Josef Gartner USA, LP, has brought suit against Consigli Construction Co., Inc., J.F. White Contracting Company, Inc., "Consigli/JFW, A Joint Venture", Travelers Casualty and Surety Company of America, and Federal Insurance Company. The suit seeks to recover on a subcontract with Consigli/JFW to create and install a wall for the Cambridge Public Library in Cambridge, Massachusetts. Plaintiff alleges breach of contract, unjust enrichment,

breach of the covenant of good faith and fair dealing, and unfair and deceptive trade practices against Consigli, J.F. White, and Consigli/JFW. It has also brought a statutory bond claim pursuant to Mass. Gen. Laws ch. 149, § 29 against all defendants. Jurisdiction is based on diversity of citizenship.

Defendants have moved for partial summary judgment as to all counts in the complaint. For the following reasons, the motion will be denied.

## I. Factual Background

The facts are set forth in the light most favorable to the plaintiff.

Josef Gartner USA, LP is a corporation that designs, fabricates, and installs custom-made aluminum and steel facades.[1]

Defendants Consigli Construction Co., Inc. and J.F. White Contracting Company, Inc. are construction companies. Defendant Consigli/JFW is a joint venture entered into by Consigli and J.F. White for the purposes of building an expansion to the Cambridge Public Library.

Defendants Travelers Casualty and Surety Company of America and Federal Insurance Company are insurers.

On January 26, 2007, Consigli/JFW entered into a contract with the City of Cambridge for a construction project involving the expansion of the Cambridge Public Library. Consigli/JFW was the general contractor for the project. In connection with the contract, and pursuant to Mass. Gen. Laws ch. 149, § 29, a payment bond in the amount of $69,245,000 was executed with Consigli/JFW as the principal, Travelers and Federal as sureties, and the City of Cambridge as the

---

[1] Gartner is now known as Permasteelisa North America Corp. Following the parties, the Court will continue to refer to plaintiff as "Gartner."

owner.[2]

On August 15, 2007, Consigli/JFW entered into a subcontract with Gartner. Under the subcontract, Gartner was to design, fabricate, and install a curtain wall for a price of $6,617,475. Article 8.A of the subcontract provided for periodic payments to Gartner as follows:

> (1) Based upon applications for payment submitted to the Contractor by the Subcontractor, corresponding to applications for payment submitted by the Contractor to the Architect and certificates for payment issued by the Architect, the Contractor shall make progress payments on account of the Subcontract Sum to the Subcontractor as provided below and elsewhere in the Subcontract Documents.
> . . .
> (5) Before issuance of each progress payment, the Subcontractor shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials, equipment and subcontractors, and all known indebtedness connected with the Subcontractor's work have been satisfied.

(Pl. Opp'n Ex. B at 6). The Subcontract provided for additional compensation due to delays and out-of-sequence work as follows:

> Notwithstanding anything contained herein to the contrary, any modification of the project schedule differing from the bid schedule shall allow Subcontractor a reasonable time to complete Subcontractor's Work in an efficient manner. Subcontractor shall be entitled to a reasonable adjustment in the price of the Work, including but not limited to any increased costs of labor, supervision, equipment or materials, and reasonable overhead and profit, for any change of schedule, acceleration, out-of sequence work or delays not caused by Subcontractor, its subcontractors, their employees or others for whose acts they may be liable.

(Am. Answer Ex. 1 at 68).

Gartner began work in November 2007 and received its first monthly payment on

---

[2] "A suretyship is a contractual arrangement in which one party, the 'surety,' agrees to back up the obligation of another, termed the 'principal' or 'principal debtor,' the latter bearing the primary burden of performing for the creditor." *Rhode Island Hosp. Trust Nat'l Bank v. Ohio Cas. Ins. Co.*, 789 F.2d 74, 77 (1st Cir. 1986). "The difference between the primary obligation of the surety and the secondary obligation of the guarantor is that the surety joins the original contract with the principal and may be sued as an unconditional promisor along with the principal; the guarantor's liability arises from an independent agreement and is expressly conditioned upon default by the principal." *Id.* at 77-78.

3

December 21, 2007. (Hervol Aff. Ex. 3). In exchange for payment of Gartner's applications pursuant to Article 8.A.1 of the subcontract (set forth above), Consigli/JFW required it to sign a "Waiver and Payment Affidavit." Each affidavit provided in relevant part as follows:

> The undersigned acknowledges that it has been paid the amount set forth above and it has been paid all sums due for all labor, services, equipment or materials furnished by the undersigned or on behalf of the undersigned to or in connection with the project and the undersigned hereby releases, discharges, relinquishes and waives any and all claims, suits, bond claims, liens, and rights of lien for all work, labor, services, equipment or materials furnished or performed in connection with construction located at the project through [date] whether such claims, demands and rights arise pursuant to a written or oral contract or otherwise. This release does not cover any retention, if any, or labor, services equipment or materials furnished after that date.
>
> The undersigned hereby certifies, as an inducement to Consigli/JFW to pay funds to it under its Subcontract . . . for work performed prior to [date], and acknowledges that Consigli/JFW will rely upon such representation that all bills for labor, materials, equipment rental, taxes, fringes and benefits and all other charges arising out of performance of the Subcontract . . . through the date above have been fully paid by the undersigned . . . .
>
> The undersigned warrants that all subcontractors, suppliers, equipment lessors, labor, taxes, union benefits and fringes applicable to this project have been paid in full through the date set forth above and agrees to defend, indemnify and hold Consigli/JFW harmless and all sureties harmless against any loss arising from the nonpayment thereof.

(*Id.* Ex. 3). Each affidavit also stated that it was "[e]xecuted as a sealed instrument." (*Id.* Ex. 3). After executing the first "Waiver and Payment Affidavit" on December 21, 2007, Gartner continued to submit payment affidavits about once a month until early 2010. It completed its work in April, 2009, and executed the last "Waiver and Payment Affidavit" on March 22, 2010. (*Id.* Exs. 1, 3).

During the course of the Project, work being performed by other subcontractors fell behind schedule. As a result, Gartner was not given access to its work areas in accordance with

4

the project schedule. Once it was given access to work areas, its progress was obstructed by other subcontractors. These delays and obstructions caused Gartner to perform its work for a longer duration and in a different sequence than was originally contemplated. Gartner notified Consigli/JFW in writing of the delays it was encountering and stated that it expected to recover its additional costs as provided in the subcontract.

On September 30, 2008, Gartner submitted a "Time/Cost Impact Claim" to Consigli/JFW for $312,711.12. That claim represented projected additional direct costs that Gartner expected to incur as a result of the delays. Gartner updated its "Time/Cost Impact Claim" on October 28, 2008, and again on April 24, 2009, as conditions on the site evolved and it was better able to assess its costs. The total additional cost indicated on the "Time/Cost Impact Claim" dated April 24, 2009, is $506,769.44. (*Id.* Ex. 1). Gartner and Consigli/JFW attempted to negotiate the "Time/Cost Impact Claim," but could not reach agreement on it. Because the claim was not approved by Consigli/JFW, Gartner could not submit a "Payment and Waiver Affidavit" for it and did not receive payment.

In addition to the "Time/Cost Impact Claim," throughout the course of the project Gartner submitted various Change Order Proposals for expected additional work. Gartner and Consigli/JFW also attempted to negotiate the Change Order Proposals, and if they reached an agreement, the Change Order Proposal became a Change Order. If agreement was reached, Gartner then submitted a payment application containing the agreed-upon Change Order, and executed a "Waiver and Payment Affidavit" in exchange for payment on that application. Gartner submitted at least three Change Order Proposals that remain unpaid by Consigli/JFW. They are dated March 19, 2009; May 7, 2009; and November 16, 2009, and total $45,725.67.

5

Gartner filed this action on April 22, 2010, alleging breach of contract and unjust enrichment against Consigli/JFW. In an amended complaint filed on August 18, 2010, Gartner also alleged breach of the covenant of good faith and fair dealing and unfair and deceptive trade practices against Consigli, J.F. White, and Consigli/JFW, as well as a statutory bond claim under Mass Gen. Laws ch. 149, § 29 against all defendants. Defendants filed the present motion for partial summary judgment on September 15, 2010, seeking dismissal of all counts to the extent that they relate to Gartner's "Time/Cost Impact Claim."

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making this determination, the Court views "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).

## III. Analysis

### A. The Breach of Contract Claims

Defendants contend that the "Waiver and Payment Affidavits" function as general releases that bar plaintiff from bringing breach of contract claims for any work done prior to its signing of the last affidavit on March 22, 2010. As noted, the subcontract provides only that "[b]efore

6

issuance of each progress payment, the Subcontractor shall submit *evidence* satisfactory to the Contractor that all payrolls, bills for materials, equipment and subcontractors, and all known indebtedness connected with the Subcontractor's work have been satisfied." (Pl. Opp'n Ex. B at 6) (emphasis added). Consigli/JFW therefore had the right under the contract to require such *evidence* prior to payment. It went further, however, and required *releases* from plaintiff as a condition of payment. It did not have the contractual right to do so. Nonetheless, plaintiff went ahead and executed the "Waiver and Payment Affidavits," including the release language. This dispute therefore focuses on the validity of those releases.

### 1. **General Principles**

Massachusetts law favors the enforcement of releases. *Sharon v. City of Newton*, 437 Mass. 99, 105 (2002); *see Eck v. Godbout*, 444 Mass. 724 (2005). The validity and effect of releases are governed by ordinary principles of contract law. *See Hermes Automation Tech., Inc. v. Hyundai Elecs. Indus. Ltd.*, 915 F.2d 739, 745 (1st Cir. 1990); *Cormier v. Central Mass. Chapter of Nat'l Safety Council*, 416 Mass. 286, 288 (1993).

It is well-settled in Massachusetts that a valid contract requires an offer, acceptance, and consideration. *See Vadnais v. NSK Steering Sys. Am., Inc.*, 675 F. Supp. 2d 205, 207 (D. Mass. 2009); *Quinn v. State Ethics Comm'n*, 401 Mass. 210, 216 (1987). However, a contract without consideration may be still enforceable if signed under seal. *Knott v. Racicot*, 442 Mass. 314, 320 (2004); *Schuster v. Baskin*, 354 Mass. 137, 141 (1968).

Where the meaning of a valid contract is in dispute, the Court must arrive at the proper interpretation by "constru[ing] the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose." *USM Corp. v. Arthur D. Little Sys.*, 28

7

Mass. App. Ct. 108, 116 (1989). Such construction "presents a question of law for the court, except to the extent disputed facts bear upon such interpretation." *Id.*; *see Robert Indus., Inc. v. Spence*, 362 Mass. 751, 755 (1973).

If the contract is unambiguous, it must be enforced according to its terms. *James Buchanan Elec., Inc. v. Tocci Bldg. Corp.*, 2000 Mass. Super. LEXIS 291, at *6 (Aug. 4, 2000) (citing *Freelander v. G&K Realty Corp.*, 357 Mass. 512, 516 (1970)). If the contract is ambiguous, the Court may consider extrinsic factual evidence "bearing upon the background and purpose of the parties, as well as their understanding of the meaning of particular language used in the contract." *USM Corp.*, 28 Mass. App. Ct. at 116; *Robert Indus.*, 362 Mass. at 753.[3]

"[A] contract is . . . ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." *Farmers Ins.*, 632 F.3d at 783. Ambiguity may exist on the face of the contract or in its application to the subject matter. *Affiliated FM*, 416 Mass. at 842; *Keating*, 24 Mass. App. Ct. at 249. However, "difficulty in comprehension does not equate with ambiguity," nor does ambiguity exist simply because the parties propound different interpretations. *Mass. Prop. Ins. Underwriting Ass'n v. Wynn*, 60 Mass. App. Ct. 824, 827 (2004).

---

[3] This evidence includes "all the circumstances of the parties leading to [the contract's] execution" and "may be shown for the purpose of elucidating, but not of contradicting or changing [the contract's] terms." *Affiliated FM Ins. Co. v. Constitution Reinsurance Corp.*, 416 Mass. 839, 842 (1994); *Keating v. Stadium Management Corp.*, 24 Mass. App. Ct. 246, 249 (1987); *see Robert Indus.*, 362 Mass. at 754-55. "[I]f the contract's terms are ambiguous, contract meaning normally becomes a matter for the factfinder, and summary judgment is appropriate only if the extrinsic evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide to the contrary." *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 784 (1st Cir. 2011); *accord Seaco Ins. Co. v. Barbosa*, 435 Mass. 772, 779 (2002)

## 2. **Consideration**

The first issue is whether the releases contained in the "Waiver and Payment Affidavits" are supported by valid consideration. Plaintiff contends that they are not and therefore are unenforceable. Defendants assert that consideration is unnecessary because the documents were signed under seal. For reasons given below, the Court finds that the releases do not suffer from any defect of consideration.

Massachusetts retains the common-law rule that no consideration is required where a release is signed under seal. *Schuster v. Baskin*, 354 Mass. 137, 141 (1968); *see Knott v. Racicot*, 442 Mass. 314, 320 (2004) ("Today the Commonwealth is one of the minority of American jurisdictions that have carried over significant elements of the sealed contract doctrine to the Twenty-first Century.").[4] Here, each affidavit clearly recites that it is "executed as a sealed instrument." (*See* Hervol Aff. Ex. 3). Under Massachusetts law, "a recital . . . that [an] instrument is intended to take effect as a sealed instrument . . . shall be sufficient to give such instrument the legal effect of a sealed instrument." Mass. Gen. Laws ch. 4, §9A; *see Knott*, 442 Mass. at 319 ("[S]imply the words 'under seal' or a similar phrase . . . [is] sufficient to invest [a] document with the privileged status of a sealed instrument."). The releases should therefore be enforceable under Massachusetts law.

Plaintiff asserts, however, that the releases fall within an exception to the "sealed

---

[4] There is, of course, a strong argument that the sealed contract doctrine is an anachronism that deserves to be put to rest. Indeed, in *Knott v. Racicot*, the Massachusetts Supreme Judicial Court held that the "sealed instrument" rule did not apply to option contracts. 442 Mass. at 323. In doing so, the court stated that the rule was a "formalit[y] that [has] lost all practical utility" and invited further challenges to its continued viability. *Id.* at 322, 323 n.14 ("Should the appropriate case present itself to us in the future, we would consider a request to substantially modify or abrogate the conclusive presumption of consideration for other types of sealed contracts, to the extent the Legislature has not directed otherwise."). Absent further rulings from the Supreme Judicial Court, however, sealed releases remain enforceable in Massachusetts. *See Schuster*, 354 Mass. at 141.

instrument" rule. In Massachusetts, "[w]hen an instrument under seal promises consideration, failure of consideration can be shown despite the seal." *Thomas v. Webster Spring Co.*, 37 Mass. App. Ct. 180, 183 (1994) (citing *Quality Fin. Co. v. Hurley*, 337 Mass. 150, 150 n.1 (1958)) (original textual alterations omitted). Plaintiff contends that the releases were supported by consideration because each affidavit referred to a specific amount to be paid to plaintiff upon its submission of that affidavit. Plaintiff further asserts, however, that this consideration was not valid because the referenced amounts were already owed to plaintiff pursuant to the subcontract. *See Swartz v. Lieberman*, 323 Mass. 109, 112 (1948) ("[A] promise to pay one for doing that which he was under a prior legal duty to do is not binding for want of a valid consideration.").

Plaintiff's argument confuses *lack* of consideration with *failure* of consideration. "Where no consideration exists, and is required, a lack of consideration results in no contract being formed in the absence of a substitute for consideration such as a writing under seal . . . . By contrast, when there is a failure of consideration, there is originally a contract when the agreement is made, but because of some supervening cause, the promised performance fails." WILLISTON ON CONTRACTS § 7:11 (4th ed.); *see Hodgkins v. Moulton*, 100 Mass. 309, 310 (1868) (recognizing legal distinction between lack and failure of consideration). The exception to the "sealed instrument" rule, as stated by the cases, applies only where there is a failure of consideration—in other words, where a party has failed to deliver a promised performance. *See Quality Fin. Co.*, 337 Mass. at 150 n.1 (failure to deliver a promised automobile); *Thomas*, 37 Mass. App. Ct. at 183 (failure to pay promised compensation). Here, plaintiff does not dispute that it was paid the amount referenced by each waiver; thus, there was no failure of consideration. Accordingly, the exception to the "sealed instrument" rule does not apply to this case, and the releases do not

require additional consideration in order to be valid under Massachusetts law.

### 3. Nature and Effect of the Releases

Although the releases satisfy the consideration requirement, there is still the question of their precise nature and effect on the parties' contractual relationship. Relying on *JTE Constructors of North Carolina v. U.S. Fid. and Guar. Co.*, 2003 WL 22937715, at *1 (M.D.N.C. Nov. 26, 2003), the parties contend that the "Waiver and Payment Affidavits" should be interpreted by this Court as part of the parties' subcontract. (Pl. Reply to Suppl. Mem. at 3; Def. Further Mem. at 5).

In *JTE Constructors*, the District Court for the Middle District of North Carolina determined that periodic releases signed by a subcontractor in exchange for payment "should be interpreted as part of the initial contractual agreement between the parties, that is, as part of the Subcontract." *Id.* at *5. The court's decision rested on the fact that the subcontract explicitly authorized such releases as a condition of payment; the releases were thus part of the original bargain embodied in the subcontract. *Id.* at *2.

The present case is distinguishable. Again, the subcontract here provides only that "[b]efore issuance of each progress payment, the Subcontractor shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials, equipment and subcontractors, and all known indebtedness connected with the Subcontractor's work have been satisfied." (Pl. Opp'n Ex. B at 6). The affidavit apparently responds to this directive when it states that "[t]he undersigned . . . certifies . . . that all bills for labor, materials, equipment rental, taxes, fringes and benefits and all other charges . . . have been fully paid" and that "[t]he undersigned warrants that

11

all subcontractors, suppliers, equipment lessors, labor, taxes, union benefits and fringes applicable to this project have been paid in full through the date set forth above . . . ."  (Hervol Aff. Ex. 3).

In contrast—and unlike the subcontract in *JTE Constructors*—the subcontract makes no mention of release or waiver of rights.  Thus, when the affidavit states that "[t]he undersigned . . . hereby releases, discharges, relinquishes and waives any and all claims, suits, bond claims, liens, and rights of lien for all work, labor, services, equipment or materials furnished or performed in connection with construction . . . through [date]," it clearly exceeds the scope of what was required by the plain language of the parties' original agreement.  (*See* Hervol Aff. Ex. 3).  This statement is not "evidence" that all indebtedness has been satisfied; rather, it is a relinquishment of a legal right.  Given this, the releases cannot be considered part of, and were not contemplated by, the original subcontract.[5]

However, they are also not completely independent from it.  Consigli/JFW required the new and additional benefit of a general release as a condition to payment of sums that were already due to plaintiff under the subcontract.  Plaintiff had no contractual obligation to execute a release before receiving payment.  But plaintiff did in fact execute the releases, and did so under seal.  If the releases are valid, this necessarily changed the original bargain between the parties.  As a result, the most sensible approach under the circumstances is to view the releases as possible modifications to the original agreement of the parties.

A modification is a contract to change the terms of a previous agreement.  It is thus

---

[5] In this way, the case is distinguishable from *Addicks Servs. v. GGP-Bridgeland, LP*, 596 F.3d 286 (5th Cir. 2010), cited by defendants.  In *Addicks*, the Fifth Circuit held that similar release language barred the subcontractor's claims for extra work.  *Id.* at 296.  However, the subcontract in *Addicks* specifically required the subcontractor to sign periodic releases, and a copy of the release was attached as an exhibit to the subcontract.  *Id.* at 290.

12

enforceable as long as there is mutual assent to, and consideration for, the modification. *Okerman v. VA Software Corp.*, 69 Mass. App. Ct. 771, 781 (2007) (citing *Gishen v. Dura Corp.*, 362 Mass. 177, 183 (1972)).[6] Agreement to a modification may be express, or "it may be inferred from the attendant circumstances and conduct of the parties." *A. Leo Nash Steel v. Southern New England Steel Erection Co.*, 9 Mass. App. Ct. 377, 383 (1980); *Okerman*, 69 Mass. App. Ct. at 781 (citing *A. Leo Nash*); *see also Cochran v. Quest Software, Inc.*, 328 F.3d 1, 9 (1st Cir. 2003) (agreement to modify a contract may be express or implied).

The only issue presented here is whether plaintiff consented to a modification of the original contract. This is a harder question than it seems. It is true that plaintiff signed each "Waiver and Payment Affidavit." But the documents do not clearly state that they are intended to modify the original contract. Where a subsequent agreement does not expressly state that it is intended to modify a preceding agreement, courts in Massachusetts have examined the attendant circumstances and conduct to determine whether there was assent. For example, in *A. Leo Nash Steel Corp. v. Southern New England Steel Erection Co.*, a contractor and subcontractor initialed a written "revised construction schedule" following the subcontractor's repeated failure to meet deadlines under the original contract. 9 Mass. App. Ct. at 380. The revised construction schedule gave no indication that the parties intended it to alter the original agreement. *Id.* at 383. The Appeals Court of Massachusetts stated that such an agreement did not manifest an "express" consent to modify. *Id.* Lacking this, the court examined the "attendant circumstances and

---

[6] This is true even where the modification is in a form that has been expressly prohibited by the original agreement. *See, e.g., Beal Bank S.S.B. v. Krock*, 1998 WL 1085807, at *3 (1st Cir. Sep. 3, 1998) ("Even a . . . written contract containing a clause stating that subsequent modifications must be in writing . . . may, under appropriate circumstances and with appropriate proof, be modified by a subsequent oral agreement."); *Cambridgeport Sav. Bank v. Boersner*, 413 Mass. 432, 439 (1992) (same); *see* WILLISTON ON CONTRACTS § 29:42 (4th ed.) ("Whenever two persons contract, no limitation self-imposed can destroy their power to contract again.").

13

conduct of the parties" to ascertain whether there was implied consent. *Id.*; *see also Okerman*, 69 Mass. App. Ct. at 781 (examining attendant circumstances despite fact that modification was signed).

Here, the attendant circumstances provide conflicting indications. Plaintiff's signature is a strong indication of consent. Furthermore, the release language in each affidavit is clear and unambiguous.[7] Because plaintiff completed all work by April 2009, the "Time/Cost Impact Claims" clearly qualified under the release as "claims" for "work, labor, services, equipment, or materials furnished or performed" at the time that plaintiff signed the last affidavit on March 10, 2010.

Other evidence, however, points in a different direction. For example, plaintiff repeatedly notified Consigli/JFW of its intent to seek compensation for delays on-site, and submitted numerous "Time/Cost Impact Claims" to that effect over a seven-month period. (Pl. Opp'n Ex. 3 ¶ 18; *see, e.g.*, Hervol Aff. Ex. 1). The "Time/Cost Impact Claims" set forth a detailed accounting of plaintiff's extra costs and stated that plaintiff "require[s] compensation for these additional direct costs due to longer durations . . . ." (Hervol Aff. Ex. 1). The uneasy coexistence of plaintiff's repeated communications of its intent to seek further compensation, on the one hand, and the execution of the monthly "Waiver and Payment Affidavits," on the other,

---

[7] Each affidavit states that the "undersigned . . . releases, discharges, relinquishes and waives *any and all* claims, suits, bond claims, liens, and rights of lien *for all work*, *labor, services, equipment*, *or materials* furnished or performed in connection with construction located at the project *through [date]*." (Hervol Aff. Ex. 3) (emphasis added). Massachusetts courts have deemed similar releases to be unambiguous and enforceable according to their terms. In *Eck v. Godbout*, for example, the Supreme Judicial Court considered a contract releasing a party from "any and all claims, demands, and liabilities whatsoever of every name and nature, both in law and in equity, which against [party] I now have or ever had from the beginning to the world to this date." 444 Mass. at 728. The court found that this was a "standard form general release" and that it "unmistakeably releas[ed] 'all' claims of whatever nature." *Id.* at 730. The present "Waiver and Payment Affidavit," although narrower than the release in *Godbout*, is no less clear in its intended scope.

14

strongly suggest that plaintiff, at least, did not view the affidavits as wiping out its rights to seek delay costs under the subcontract.

Furthermore, the subcontract expressly gave plaintiff the right "to a reasonable adjustment in the price of the Work, including but not limited to any increased costs of labor, supervision, equipment or materials, and reasonable overhead and profit, for any change of schedule, acceleration, out-of sequence work or delays not caused by Subcontractor." (Am. Answer Ex. 1 at 68). The release language effectively deletes this language from the contract. By inferring plaintiff's consent to such a modification, the Court would have to believe that plaintiff was willing to waive this valuable right unilaterally—only a month into the work, and in exchange for nothing. This latter point is compelling. Unlike a normal contract modification, plaintiff gained literally nothing of value by giving a release. Indeed, the release is only enforceable due to a contractual formality that has been heavily criticized. *See Knott v. Racicot*, 442 Mass. 314, 322 (2004) (calling the "sealed instrument" rule a "formalit[y] that [has] lost all practical utility"). Common sense therefore suggests that plaintiff did not consent to such a modification here.

Whether there was mutual assent to a contract is normally a question of fact. *Watkins v. Simplex Time Recorder Co.*, 316 Mass. 217, 223 (1944); *Lofty Enterprises v. Nextel Comm'ns of the Mid-Atlantic, Inc.*, 2005 WL 2787563, at *1 (Mass. App. Ct. Oct. 26, 2005); *see U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135 (2d Cir. 2002). Thus, under the circumstances, the question of whether Gartner assented to a modification is not appropriate for resolution on summary judgment. Accordingly, defendants' motion for summary judgment as to the breach of contract claims will be denied.

    **B.**     **The Remaining Claims**

Defendants also rely on the release language in the "Waiver and Payment Affidavits" for summary judgment on plaintiff's unjust enrichment, breach of the covenant of good faith and fair dealing, unfair trade practices, and statutory bond claims. For the reasons given above, the motion for summary judgment will be denied as to these claims.

Although it is not essential to the disposition of defendants' motion, the Court briefly addresses plaintiff's argument that it may assert the bond claims against the sureties even if the general contractor has been released from liability. This is clearly wrong. In Massachusetts, as elsewhere, "[i]t is a principle of the law of suretyship that a release or covenant not to sue the person known by the covenantor to be the principal will discharge the surety." *Karcher v. Burbank*, 303 Mass. 303, 308 (1939); *accord Rhode Island Hosp. Trust Nat'l Bank v. Ohio Cas. Ins. Co.*, 789 F.2d 74, 78 (1st Cir. 1986) ("The basic rule of on the liability of sureties is that the surety is not liable to the creditor unless his principal is liable."); *Mestek, Inc. v. United Pac. Ins. Co.*, 40 Mass. App. Ct. 729, 732 (1996) ("As a general rule, a surety is not liable to the creditor unless his principal is liable."); *see also Hermes Automation Tech., Inc. v. Hyundai Elecs. Indus. Ltd.*, 915 F.2d 739, 748 (1st Cir. 1990) (citing *Karcher*). Although there are exceptions to this general rule, none of them apply here. *See generally Rhode Island Hosp.*, 789 F.2d at 79 n.6 (listing exceptions); *Mestek*, 40 Mass. App. Ct. at 732 (citing explanation of suretyship law in *Rhode Island Hosp.* with approval).

Nevertheless, plaintiff contends that the obligation of the sureties in this case may not be discharged by a release of the general contractor because the payment bond is required by Mass. Gen. Laws ch. 149, § 29. According to plaintiff, such a release would go against the statute's purpose of "expedit[ing] payment to subcontractors, thereby alleviating their concerns over non-

payment, [which] may result in the lowering of bids and a reduction in the overall costs of labor and materials to the public." (Pl. Opp'n at 18) (quoting *Venus Drywall v. Kullman Indus.*, 1996 Mass Super. LEXIS 596, at *22 (Mar. 22, 1996)).

Plaintiff over-reads the intent of the statute. The purpose of § 29 is merely to put subcontractors on the same footing in government contracts—where public buildings are immune from lien—as they would be in private contracts. *Venus Drywall*, 1996 Mass. Super. LEXIS at *21 (statute's purpose is to "compensate for th[e] difference in protection" afforded to government subcontractors and private subcontractors); *see also* Mass Gen. Laws ch. 254, § 6 (granting immunity from liens to public buildings). There is nothing about this statutory directive that requires sureties in a government contract to be held accountable where a general contractor has been legally released from liability.

Thus, absent evidence of an exception to the general rule (of which none has been presented), the affidavits will release the sureties from liability if they are found to release Consigli/JFW from liability.

## IV. Conclusion

For the foregoing reasons, defendants' motion for partial summary judgment is DENIED.
**So Ordered.**

                                             /s/ F. Dennis Saylor
                                            F. Dennis Saylor IV
Dated: June 10, 2011                        United States District Judge